# EXHIBIT "G"

January 6, 2006

United States Department of Justice
950 Pennsylvania Avenue
Washington, D.C. 20530
Attn. Disability Rights Division

Dear Sir/Madam:

I am writing to file 6 Complaints against the Colorado State Board of Law Examiners ("the Board") with regard to their admission procedure in general, and more specifically, the manner it which it has been applied to me. I have been admitted to practice law in New York State for 9 years, during which time the New York State Bar did not receive a single complaint with regard to my practice. I have recovered millions of dollars for hundreds of clients and am intimately familiar with all facets of civil litigation. I was living and working next to the World Trade Center on September 11th and moved to Colorado shortly thereafter to start a new life.

I passed the Colorado Bar Exam in 2004 and fulfilled all requirements to be admitted, yet the Board recently denied my application because I failed to provide a six-year old hospital record (under suspicion it relates to mental health). I informed the Board that I was a qualified individual with a disability (bi-polar disorder) and provided ample case law supporting the position that I was not required to produce this record, yet the Board persisted in its demand. After three years of discriminatory treatment and a recent denial of my application, I was left with no alternative but to file a complaint with this office.

While I fulfilled all requirements to be admitted over 18 months ago, the Board has denied my application, eliminating my ability to practice the only profession I know. I have no income, no medical insurance, and must depend on the generosity of friends and family to live while I await the resolution of this matter. I am unable to return to New York to practice law because of the haunting associations of September 11th. I am unable to apply for admission in other jurisdictions while this dispute is pending because all states ask whether an application for admission has been denied in another jurisdiction.

The Board has committed numerous violations of the Americans with Disabilities Act of 1990 (ADA) and as well as Due Process, Equal Protection, Privacy, and Privileges and Immunities violations under the United States Constitution. Such violations include but are not limited to the termination of my application for failure to provide a 6-year old hospital record, questions 39 and 40 of the Colorado Bar application, and inappropriate questions posed at a 2-hour Inquiry Panel Hearing.

Please contact me if you require additional information.

Sincerely,


Evan Spencer

# **COMPLAINT # 1**

## THE BOARD'S DENIAL OF MY APPLICATION FOR FAILURE TO PRODUCE A SIX-YEAR OLD HOSPITAL RECORD VIOLATES THE ADA AND THE CONSTITUTION

In a letter dated October 25, 2004 (attached hereto), the Board requested a 1999 hospital record under suspicion that it related to mental health. After obtaining a copy of this record, I concluded that it contained personal matters associated with my disability that I did not wish to disclose to the Board. Over the following months I researched the matter and consulted with attorneys, concluding that the Board was not entitled to a 6-year old medical record because it does not reflect on my present fitness to practice law. On September 21, 2005, I responded (letter attached hereto) by stating that their request violated the ADA. A letter from the Board dated October 14, 2005 (attached hereto) informed me that a decision would not be rendered with regard to my application until this hospital record was provided. On November 9, 2005 I responded with a 7-page letter (attached hereto) further supporting my position. On December 8, 2005, the Board sent a letter denying my application, stating that the 18-month deadline had passed (since passing the bar exam), and that my application was denied because the requested hospital record was "necessary" to make a decision.

### ADA – Title II

Title II of the ADA prohibits a licensing board from imposing unnecessary burdens on persons with disabilities at all stages of the licensing process, regardless of whether a license is granted. "For Defendants to have discriminated against Plaintiffs in contravention of the ADA, Defendants neither need to deny Plaintiff's admission to the Florida Bar nor possess actual knowledge of Plaintiffs' disabilities." Ellen S. v. Florida Board of Bar Examiners, 859 F. Supp at 1493 (S.D.Fla. 1994).

The Board's denial of my application for failure to produce a six-year old medical record violates Section 35.130(b)(6) and (8) of the ADA. Section 35.130(b)(6) of the ADA states that:

> a public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability.

Section 35.130(b)(8) of the ADA:

> …forbids a public entity from… imposing or applying eligibility criteria that screen out or tend to screen out any individuals with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity…

The Board's demand for a six-year old hospital record poses a requirement based upon my disability that is far greater than those imposed on other applicants, violating the ADA. In Clark v. Virginia Board of Bar Examiners, 880 F.Supp. at 431 (E.D.Va. 1995), the court stated that, "unlike other applicants, those with mental disabilities are required to subject themselves to further inquiry and scrutiny. The Court finds that this additional burden discriminates against those with mental disabilities." Id, at 442. The court concluded that Question 20(b) [Have you within the past five (5) years been treated or counseled for any mental, emotional or nervous disorder?] violated the ADA and the applicant was not required to answer.

Since 1990, courts have consistently held that inquiries similar to the Board's violate the ADA, see Ellen S. at 1494 (Florida's mental healthy questions "discriminate against Plaintiffs by subjecting them to additional burdens based on their disability"); Medical Society of New Jersey v. Jacobs, 1993 WL 413016, *7 (D.N.J. 1993) (mental health questions imposed extra burdens on qualified persons with disabilities in violation of ADA); and In re applications of Underwood and Plano No. BAR-93-21, 1993 WL 649283 at *2 (Me. Dec. 7, 1993) (requirement that applicants answer mental health questions discriminates on the bases of disability and imposes eligibility criteria that unnecessarily screen out individuals with disabilities).

The Supreme Court of Rhode Island held that in order to comply with the ADA, two questions on the state's bar application regarding mental health histories would have to be modified, In re Petition For Admission to the R.I. Bar, 683 A.2d 1333 (1996). One question asked about a diagnosis or treatment for "an emotional disturbance, nervous or mental disorder" and a second asked whether the applicant had ever been "hospitalized, institutionalized or admitted to any medical or mental health facility . . . for treatment or evaluation for any emotional disturbance, nervous or mental disorder." **The Court ordered a rewriting** such that one question would now ask only whether the applicant was *currently* suffering from any disorder that impairs judgment or would adversely affect the ability to practice law.

### Six-Year Old Hospital Record is not "Necessary"

Section 35.130(b)(8) of the ADA: "...forbids a public entity from... imposing or applying eligibility criteria that screen out or tend to screen out any individuals with a disability... unless such criteria can be shown to be *necessary*..." The Board will be unable to establish that the discriminatory practices employed by them are "necessary" for the following reasons: (1) Most jurisdiction have eliminated or limited mental health inquiries since 1990 to comply with the ADA, (2) Mental health "red flags" rarely provide a basis to reject an applicant, (3) Discriminatory stereotypes and inquiry into disability status are not "necessary" because the Colorado Bar application process inquires extensively into behavior, (4) The Attorney Regulation Counsel of the State of Colorado can safely monitor the practice of a qualified attorney with a disability,    (5) Most physical and mental disabilities are excluded from the Board's inquiry, and    (6) Mental health inquiries are less "necessary" for a lawyer who has been admitted to practice for nearly a decade, as opposed to a law student who has never practiced law.

**(1)** Most jurisdictions have eliminated or limited mental health inquiries since 1990 to comply with the ADA. Since law examiners and courts have been eliminating and modifying mental health inquiries consistently since 1990, such inquiries can not be seen as "necessary." If inquiries into mental health status were "necessary," they would be required for admission to practice law in all 50 states. However, the National Conference of Bar Examiners (NCBE) no longer inquiries into past hospitalization on their application and even Colorado eliminated its hospitalization question in 2002 or 2003 and modified its mental health inquiries. Therefore, as the trend of law examiners and courts has been toward eliminating and limiting mental health inquiries based upon status, particularly inquiries into past hospitalization, such measures can not be seen as "necessary."

**(2)** Mental health "red flags" rarely provide a basis to reject an applicant and therefore are not "necessary." In Clark v. Virginia Board of Bar Examiners, 880 F. Supp. 430 (E.D.Va. 1995), the court stated in footnote 12. that, "(N)otwithstanding its receipt of 47 affirmative responses, the Board has never denied a license on the basis of prior mental health counseling... Thus, Question 20(b) has failed to serve its purpose of preventing the licensure of applicants lacking the fitness to practice law." Id at 437. Responses of about 20,000 applicants to mental health inquiries over a period of seven years never resulted in an applicant's non-certification for admission to the District of Columbia bar. Reishel, The Constitution, the Disability Act, and Questions about Alcoholism, Addiction, and Mental Health, 61 The Bar Examiner 10, 20 (1992).

**(3)** Discriminatory stereotypes and inquiry into disability status are not "necessary" because the Colorado Bar application process inquires extensively into behavior. The application process for the Colorado Bar is extensive and provides ample information without requiring the use of discriminatory practices. School records, arrest records, employment records, military records, driving records, business and personal references, personal interviews, and even fingerprints are included in the application process. The discriminatory practice of "red-flagging" particular mental disabilities is therefore not "necessary" to accomplish their goal of admitting only qualified applicants.

Courts have ruled consistently that inquiries into "conduct" and "behavior" as opposed to "status" provide the appropriate means for screening applicants. In Medical Society of New Jersey (D.N.J. 1993), the court stated that, "The essential problem with the present questions is that they substitute an impermissible inquiry into the *status* of disabled applicants for the proper, indeed necessary, inquiry, into the applicants' behavior." (emphasis added) The court found questions regarding applicant's treatment for psychiatric illness and substance abuse unnecessary where the medical examiners could "formulate a set of effective questions that screen out applicants based only on their behavior and capabilities." Id. The Minnesota Supreme Court struck inquiries into a bar applicant's mental health history and found that "question relating to *conduct* can, for the most part, elicit the information necessary for the Board of Law Examiners to enable the Court to protect the public from unfit practitioners." In re Petition of Frickey, 515 N.W.2d 741, 741 (Minn. 1994); see also, In re Underwood, 1993 WL 649283, at *2 (striking inquiries into mental health history, but stating that questions related to "behavior that can affect the practice of law" are permissible).

(4) The Attorney Regulation Counsel of the State of Colorado can safely monitor the practice of a qualified attorney with a disability. While the Board is responsible for screening applicants, the Attorney Regulation Counsel monitors the behavior of practicing lawyers. "The Court has also established procedures regarding the investigation of alleged unethical conduct... To administer the procedures, the Colorado Supreme Court has appointed an Office of Attorney Regulation Counsel." (*see*, Colorado Supreme Court Web Site)

> When attorneys enter the practice of law, they take an oath to uphold the law and to follow the standards of ethics established by the Colorado Supreme Court. An attorney who violates the law and/or those standards is subject to discipline. In cases involving minor misconduct, an attorney may be admonished, censured, or placed in a diversion program. In serious matters, attorneys face suspension of their license to practice law or disbarment." (*see*, Colorado Sup. Court Web Site)

Since the Attorney Regulation Counsel protects Colorado residents from unfit lawyers, it is not "necessary" for the Board to screen out applicants with disabilities. By admitting an applicant to practice, the Board is not bestowing tenure of any sort. From the first day of admission, an attorney in the State of Colorado is subject to discipline for improper behavior by the Attorney Regulation Counsel.

(5) Most physical and mental disabilities are excluded from the Board's inquiry. Since the Board protects certain individuals from further inquiries into their disabilities, including those with epilepsy, mental retardation, cerebral palsy, cancer, AIDS, diabetes, and multiple sclerosis, as well individuals who are deaf and blind, it can not be "necessary" to impose additional burdens and make further inquiries into the individuals with bipolar disorder, schizophrenia, and a short list of other protected disabilities. All disabilities affect one's ability to practice law, yet a select minority have been arbitrarily chosen for further inquiries by the Board. If such inquiries were "necessary," they would extend to all individuals with disabilities. One can not argue that a lawyer who has bipolar disorder or schizophrenia is affected more by their disability than one who is autistic, mentally retarded, or dying of cancer or AIDS.

(6) Mental health inquiries are less "necessary" for a lawyer who has been admitted to practice for nearly a decade, as opposed to a law student who has never practiced law. The discriminatory practices of the Board are particularly unnecessary as applied to this applicant, because I have been admitted to practice in another jurisdiction for 9 years, where the Bar Association did not receive a single complaint about my practice. Virtually all other cases cited in this complaint involve law students applying for admission. In such cases, inquiry into histories of mental disabilities might be more relevant to help law examiners determine if an applicant is fit to practice law, because none of those applicants had practiced law. However, the best criteria to determine my fitness to practice is an analysis of my years of practice, not my status as a disabled person. One does not have to project or imagine what might happen if I practice law, because I have been practicing law successfully for almost a decade. I have successfully represented hundreds of clients in all facets of civil litigation.

**Strict Scrutiny**

Under the Fourteenth Amendment and other provisions of the United States Constitution, applicants have a right of privacy which protects the confidentiality of personal matters and vests applicants with a constitutionally protected interest in avoiding the disclosure of such personal matters. The right to privacy involves two distinct interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." Whalen v. Roe, 429 U.S. 589, 600 (1977); Sheets v. Salt Lake County, 45 F.3d 1383, 1387 (10th Cir. 1995). The first of these is referred to as the interest in "confidentiality" and the second the interest in "autonomy." Hawaii Psychiatric Society v. Ariyoshi, 481 F. Supp. 1028, 1037-38 (D. Hawaii 1979). Both are violated by the Board's request for a 1999 hospital record.

## Conclusion

Congress sought to abolish unnecessary classifications based on disability by enacting Title II of the ADA. Nowhere was this need greater than in protecting the rights of persons with *mental* disabilities. The ADA outlaws these classifications and seeks to abolish attendant stereotypes and prejudices. It is possible that the Colorado Board of Bar Examiners may find its task of identifying applicants unfit to practice law more time-consuming and labor-intensive if required to look at an applicant's individual ability and individual record of behavior, rather than using disability as a "red flag" to separate out applicants for further investigation. The ADA, however, requires no less. The Board's denial of my admission to practice for failing to provide a six-year old medical record violates the ADA as it reflects the administering of a licensing program in a manner that subjects disabled individuals to discrimination, by "establishing requirements" that subject disabled individuals to discrimination, and by imposing "eligibility criteria" that tend to screen out a "individuals with disabilities."

**WHEREFORE, I respectfully request that the Department of Justice declare that the Board's request for a 6-year old hospital record violates the ADA and the Constitution, and that the Board be required to render a decision with regard to my application absent this 1999 record.**

Even prior to the enactment of the ADA, the Supreme Court ruled that, "the opportunity to practice law should be considered a 'fundamental right,'" Supreme Court of New Hampshire v. Piper, 470 U.S. 274 (1985). Therefore, "Strict Scrutiny" as opposed to "Rational Basis" is applied to the Board's conduct. The Board must prove that the request for a six-year old hospital record serves a compelling state interest and that it is necessary to serve that interest. Furthermore, the Board must prove that their request is "narrowly tailored to the achievement of that goal." Lastly, under Strict Scrutiny, the Board (not the applicant) has the burden of proof once it has been established that a fundamental right is at issue.

While the admission of qualified applicants is a compelling state interest, obtaining a six-year old medical record is not necessary and is certainly not narrowly tailored to the achievement of that goal. In Clark v. Virginia Board of Bar Examiners, 880 F.Supp. at 431 (E.D.Va. 1995) the court stated that according to the American Psychiatric Association, "psychiatric history should not be the subject of applicant inquiry because it is not an accurate predictor of fitness." A current medical examination by an independent physician is the most narrowly tailored means of investigating an applicant's mental stability. Therefore, the Board's demand for this 1999 record and subsequent denial of admission for failure to produce it, violate the Due Process and Equal Protection Clauses of the Constitution.

### Supreme Court Precedent

In Schware v. Board of Bar Examiners, 353 U.S. 232 (1957), the Supreme Court established several precedents that have been violated by the Board. The Court ruled that "a person cannot be prevented from practicing (law) except for valid reasons. Certainly the practice of law is not a matter of the State's grace," that "(O)fficers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards, or when their action is invidiously discriminatory." Schware at 239, and that "…any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Schware, at 238-239. A 6-year old hospital record does not have a "rational connection" to my "fitness or capacity to practice law," the Board has denied my application without "valid reasons," and the Board's conduct is "invidiously discriminatory."

The Supreme Court has also recognized there is substantial liberty interest under the Due Process Clause of the Constitution in avoiding the social stigma of being known to have been treated for a mental illness. "An individual's liberty is 'substantially affected' by the stigma attached to treatment in a mental hospital Parham v. J.R., 442 U.S. 584, 622; "Discharged patients must not only cope with the stigma of having once been hospitalized, but must often continue to cope with the 'mental illness' label itself… Even the most enlightened persons may unwittingly harbor views associated with this stigma." In Re John Ballay, 482 F.2d 648, 668-69 (D.C. Cir. 1973). "Congress, in enacting the 'regarded as' provision, acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from the impairment." County v. Arline, 480 U.S. 273 (1987).

### Invasion of Privacy

# COMPLAINT #2

## 18-MONTH DEADLINE FOR APPLICANTS VIOLATES THE ADA AND THE CONSTITUTION

In order to comply with the ADA and assure applicants of Due Process, any 18-month deadline must be stayed/extended when there is a bona fide dispute concerning the application process. If this deadline is not extended, it discriminates against disabled individuals who do not wish to disclose personal matters requested by the Board, in violation of the ADA. It violates Due Process by acting as a complete bar of admission to anyone who fails to comply with the Board's requests, even requests that are illegal, discriminatory, and unconstitutional.

In October 2005 I informed the Board that my 1999 hospitalization was associated with a disability protected under the ADA. On November 9, 2005, I wrote a 7-page letter to the Board explaining why I did not have to provide the 1999 hospital. After the second letter, the Board replied stating that my letter was received 10 days after the 18-month deadline and that my application was denied, ignoring the content.

In my letter, I offered to appear for a medical examination, but this request was ignored. This violates the ADA and Due Process by failing to afford me the opportunity of proving that I am fit to practice law in Colorado. The Board's letter stated that "Applicants must demonstrate that they are mentally stable and ethically and morally qualified," yet they denied me the opportunity of doing so. Any reasonable person knows that a six-year old medical record is irrelevant to my present ability to practice law. If the Board is concerned that I am not mentally stable, then the best way to find out is to conduct a medical examination to determine me present fitness.

The Board was also negligent over the past year in failing to contact the Department of Justice to consider whether their request was appropriate. As the Board is well aware, the United States Constitution and Acts of Congress are the supreme laws of this country. Colorado law does not empower the Board to violate the Constitution or the ADA. If there is a conflict between State and Federal law or the Constitution, Federal law and the Constitution prevail. If a demand for a six-year old hospital record violates the ADA and privacy rights under the Constitution, the Board must withdraw this request. The Board has spent over a year trying to bully me into providing this record without providing any legal or medical reasons why this is "necessary." This is not fair or just and constitutes a denial of Due Process, Equal Protection, and Invasion of Privacy.

**WHEREFORE, I respectfully request that the Department of Justice order the Board to extend their 18-month deadline and complete their evaluation of my application for admission absent the requested 1999 hospital record.**

# COMPLAINT # 3

## QUESTION #40 OF THE COLORADO BAR APPLICATION VIOLATES THE ADA AND THE CONSTITUTION

Question #40 of the Colorado Bar application asks:

> Within the past five years, have you at any time been admitted as a patient to a hospital, either on a voluntary or involuntary basis, for treatment of any emotional or mental disability or disorder? (YES, provokes a deeper inquiry)

Virtually all cases and authorities support my position that inquiries into past history of mental disabilities are discriminatory. In a 1994 letter from the Department of Justice to the Supreme Court of Arizona, similar questions were found to violate the ADA, *also see* Clark v. Virginia Board of Bar Examiners, (E.D.Va. 1995), Ellen S. v. Florida Board of Bar Examiners, (S.D. Fla.1994), Medical Society of New Jersey v. Jacobs, (D.N.J. 1993), In re applications of Underwood and Plano, WL 649283 at *2 (Me. Dec. 7, 1993). In re Petition of Frickey, et al., 515 N.W.2d 741 (Minn. 1994). Isolating mental disabilities for persecution, while exempting physical disabilities, is precisely the kind of discrimination the ADA was designed to eliminate. Such an inquiry is based upon stereotypes and prejudices, suggesting that applicants with mental disabilities are less fit to practice law than those with physical disabilities.

The ADA protects qualified individuals with disabilities from discrimination:

> Examples of physical or mental impairments include, but are not limited to, such contagious and non-contagious diseases and conditions as orthopedic, visual, speech, and hearing impairments; cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism."

This list is not exclusive, and would therefore contain Autism Spectrum Disorders, Terets Syndrome, Lupus, Narcolepsy, and a host of additional physical and mental disabilities. Question #40 of the Colorado Bar Application (attached hereto) arbitrarily inquires into some of the disabilities protected under the ADA, while exempting others. There is no medical or legal basis for concluding that mental disabilities (ie. bipolar disorder, schizophrenia) affect one's ability to practice law more than physical disabilities (ie. blindness, cancer).

***All 18 of the disabilities specifically enumerated in the ADA affect one's ability to practice law, yet the board has chosen to isolate certain mental disabilities for persecution.*** A lawyer afflicted with AIDS, like Tom Hanks' character in Philadelphia, is exempt from disclosing hospital records with regard to treatment. A wheelchair-bound lawyer with multiple sclerosis or muscular dystrophy is similarly exempt, as are lawyers that are deaf or blind.

The Board's request for a six-year old hospital record under suspicion it relates to mental health violates Section 35.130(b)(6) of the ADA as it reflects the administration of a, "licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability," and establishes, "requirements... that subject qualified individuals with disabilities to discrimination on the basis of disability." The Board has also violated Section 35.130(b)(8) of the ADA by, "... imposing or applying eligibility criteria that screen out or tend to screen out any individuals with a disability or any class of individuals with disabilities..." Individuals with physical and mental disabilities far more severe than mine are exempt from investigation, while the Board has arbitrarily isolated certain "class(es) of individuals with disabilities," for persecution in violation of the ADA.

My position has been soundly supported by virtually all courts applying the ADA to state licensing procedures. In Maine, the court ruled that bar examiner's inquiry into diagnosis and treatment for emotional, nervous or mental disorders, and accompanying medical authorization form, violates ADA (emphasis added), In re Applications of Underwood and Plano, No. BAR-93-21, 1993 WL 649283 at *2 (Me. Dec. 7, 1993). The court held that the requirement that applicants answer mental health questions discriminates on the bases of disability and imposes eligibility criteria that unnecessarily screen out individuals with disabilities. In Clark v. Virginia Board of Bar Examiners, 880 F.Supp. at 431 (E.D.Va. 1995) the court stated that according to the American Psychiatric Association, "psychiatric history should not be the subject of applicant inquiry because it is not an accurate predictor of fitness." Id., at 435. The court concluded that Question 20 (b) ("Have you within the past five (5) years been treated or counseled for any mental, emotional or nervous disorder?") violated the ADA and the applicant was not required to answer the question: "unlike other applicants, those with mental disabilities are required to subject themselves to further inquiry and scrutiny. The Court finds that this additional burden discriminates against those with mental disabilities." Clark at 442. In Ellen S. at 1494 (S.D. Fla.1994) the court ruled that Florida's mental health questions "discriminate against Plaintiffs by subjecting them to additional burdens based on their disability." In Medical Society of New Jersey, at 7 (D.N.J. 1993) the court ruled that mental health questions imposed extra burdens on qualified persons with disabilities in violation of ADA ("extra investigation of qualified applicants" constituted "invidious discrimination under the Title II regulations.")

The Board's inquiries into an individual's history of disabilities also has a more insidious discriminatory effect. This deterrence factor was part of the basis for the State of Minnesota Supreme Court's order In re Petition of Frickey, et al., 515 N.W.2d 741 (Minn. 1994) (deleting questions regarding mental health history from bar admissions application on grounds that the questions deterred law students from seeking needed counseling). "...Broad mental health questions may inhibit the treatment of applicants who do seek counseling. Faced with the knowledge that one's treating physician may be required to disclose diagnosis and treatment information, applicant may be less than totally candid with their therapist." Clark v. Virginia Board of Bar Examiners, 880 F.Supp. at 438 (E.D.Va. 1995) Concern over the Board's inquiries about diagnosis and treatment for mental illness deters law students and other applicants from seeking

counseling for mental or emotional problems. *See* Stephen T. Maher & Lori Blum, A Strategy for Increasing the Mental and Emotional Fitness of Bar Applicants, 23 Ind. L. Rev. 821, 830-33 (1990).

The inquiries are also burdensome because of the stigma that attaches to treatment for mental or emotional illness. As the Supreme Court has recognized, there is substantial liberty interest under the Due Process Clause of the Constitution in avoiding the social stigma of being known to have been treated for a mental illness. Parham v. J.R., 442 U.S. 584, 622 (an individual's liberty is "substantially affected" by the stigma attached to treatment in a mental hospital); see also In Re John Ballay, 482 F.2d 648, 668-69 (D.C. Cir. 1973) ("discharged patients must not only cope with the stigma of having once been hospitalized, but must often continue to cope with the 'mental illness' label itself... Even the most enlightened persons may unwittingly harbor views associated with this stigma."); and County v. Arline, 480 U.S. 273 (1987), (Congress, in enacting the, "regarded as" provision, "acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from the impairment.").

The Board's actions are particularly egregious considering they removed question #40 (regarding hospitalization for mental disabilities) from their application in 2002 or 2003, following a four-year lawsuit with the ACLU, who argued this question violated the ADA. The NCBE has also removed this question from its application, as have most other jurisdictions. Therefore, it is apparent that law examiners and courts throughout the country have come to realize that this type of inquiry is discriminatory under the ADA and/or unnecessary. While the Board no longer asks applicants about hospitalization for mental disorders, it is demanding that I provided a six-year old hospital record under suspicion it relates to a mental disorder. This "extra investigation" constitutes "invidious discrimination under the Title II regulations" and must be prohibited as a matter of law.

**WHEREFORE, I respectfully request that the Department of Justice declare that Question #40 of the Colorado Bar Application violates the ADA and the Constitution.**

# COMPLAINT # 4

## QUESTION #39 OF THE COLORADO BAR APPLICATION VIOLATES THE ADA AND THE CONSTITUTION

Question #39 of the Colorado Bar application asks:

> Within the past five years have you been diagnosed with or have you been treated for any of the following: schizophrenia or any other psychotic disorder, delusional disorder, bipolar or manic depressive mood disorder, major depression, antisocial personality disorder, or another condition which significantly impaired your behavior, judgment, understanding, capacity to recognize reality, or ability to function in school work or other important life activities? (YES, provokes a further inquiry)

In a 1994 letter from the Department of Justice to the Supreme Court of Arizona, similar questions were found to violate the ADA. This question is discriminatory because it creates requirements and eligibility criteria that tend to screen out certain applicants with certain mental disabilities, including bi-polar disorder. Qualified individuals with schizophrenia, bipolar disorder, and major depression, are no more disabled than individuals who are mentally retarded, autistic, or suffering from terminal cancer or AIDS, yet the Board has chosen to isolate these mental disorders for further scrutiny. Imposing these types of burdens on certain classes of disabled individuals is discriminatory, based upon prejudices and stereotypes, and has been outlawed by virtually every state and federal court that has adjudicated such matters, *see* In re Petition For Admission to the R.I. Bar, 683 A.2d 1333 (1996), In re Petition of Frickey, 515 N.W.2d 741 (Minn. 1994); Ellen S. v. Florida Board of Bar Examiners, 859 F. Supp at 1493 (S.D.Fla. 1994); Clark v. Virginia Board of Bar Examiners, 880 F. Supp. At 442 (E.D.Va. 1995); Medical Society of New Jersey v. Jacobs, 1993 WL 413016, *7 (D.N.J. 1993); and In re applications of Underwood and Plano No. BAR-93-21, 1993 WL 649283 at *2 (Me. Dec. 7, 1993).

By naming Bi-polar Disorder on a short list of disabilities that provoke deeper inquiries, the Board is implying that Bi-polar Disorder affects one's ability to practice law more significantly than disabilities that are not listed. 2 million Americans suffer from Bi-polar Disorder, yet it is one of the most easily treated of all mental and physical disabilities. With medication, proper diet, and exercise, an individual with Bi-polar Disorder can exist in society without being detected by a layperson or doctor. However, individuals who are mentally retarded, autistic (ADD, ADHD, PDD, etc.) or have other mental disabilities can not be so easily treated; there is little if anything that can be done to help such individuals. Physical disabilities such as blindness, deafness, paralysis, multiple sclerosis, cancer, and AIDS, affect an individual's ability at least as much as Bi-Polar Disorder, yet these individuals are immune from invasive inquiries. Arbitrarily isolating Bi-Polar Disorder without any legal or medical justification violates the ADA, as well as Due Process, Equal Protection, and Privacy guarantees of the Constitution.

The question is also discriminatory because it isolates people who have received treatment for further inquiry, while individuals who have not received treatment are exempt. Ironically, the key word in the question that provokes a deeper inquiry is "treated." People who have sought treatment are dissected by the Board, while people who have not sought treatment are free from further inquiries. This policy discourages law students and other applicants from seeking treatment for fear that it will be discovered by the Board. If an applicant has sought treatment for a mental disability, this should be regarded as positive. Disabled individuals who seek treatment are more fit to practice law than those who do not seek treatment. As a disabled individual who has sought treatment, I am at a disadvantage to disabled individuals who do not seek treatment. This type of inquiry violates the ADA, as well as Due Process and Equal Protection.

The question is also vague and overly-inclusive. A five-year history of treatment is unnecessary; the Board's "compelling interest" is to determine the applicant's "current" ability to practice law, and medical history is irrelevant to this inquiry. In addition, the last portion of the question includes the following catch-all description:

> "... another condition which significantly impaired your behavior, judgment, understanding, capacity to recognize reality, or ability to function in school work or other important life activities?"

How does an applicant determine if a condition is "significant"? What is an "important life activity"? For a variety of reasons, the aforementioned question is discriminatory, prejudicial, vague, and over-inclusive, in violation of the ADA and Due Process, Equal Protection, and Privacy guarantees of the Constitution.

**WHEREFORE, I respectfully request that the Department of Justice declare that Question #39 of the Colorado Bar Application violates the ADA and the Constitution.**

# COMPLAINT #5

## THE BOARD POSED NUMEROUS INAPPROPRIATE QUESTIONS AT THEIR TWO-HOUR INQUIRY PANEL HEARING IN VIOLATION OF THE ADA AND THE CONSTITUTION

At an Inquiry Panel Hearing held by several members of the Board in the fall of 2004, the Board member leading the inquiry asked numerous inappropriate questions and made several inappropriate comments in violation of the ADA and the Constitution. When considering the case of an individual in New Mexico who was wrongfully denied admission, the Supreme Court stated that, "...any qualification must have a rational connection with the applicant's fitness or capacity to practice law." Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232 at 238 – 239 (1957). While many of the questions asked by the Board at this hearing were appropriate and necessary, many of these questions and lines of inquiry constitute Due Process and Equal Protection violations as well as an Invasion of Privacy.

### September 11th Inquiries

I lived and worked in "Zone 1" on the morning of September 11th. After relaying my experiences associated with September 11th, the leader of the inquiry asked if I had sought psychotherapy, and then suggested multiple times that I do so. Firstly, asking about psychotherapy in association with September 11th is highly offensive, and more importantly, it is an invasion of privacy. Secondly, it is clear from the Board's application process that answering "YES" to such a question will provoke a deeper inquiry including demands for medical records; the Board's approach therefore has the secondary effect of discouraging applicants from seeking therapy for fear that these records will have to be disclosed. Thirdly, the lawyer who repeatedly made this suggestion is not a doctor. Suggesting that I undergo psychotherapy in front of the entire Board is an insulting, embarrassing, and stigmatizing comment that suggests to the Board that I have psychiatric problems – that witnessing the events of September 11th makes an applicant unfit to practice. Clearly, this line of inquiry constitutes Due Process and Equal Protection violations as well as an Invasion of Privacy.

### Name Change Inquiries

In 2002, I legally changed my name from Evan Spencer Feinberg to Evan Spencer (court order attached hereto). Upon changing my name I forwarded a copy of the court order to the Board. At the Inquiry Panel hearing they asked me why I changed my name, and I informed the Board that I did so to avoid religious persecution. This should have ended the inquiry. Changing my name does not have a "rational connection" to my "fitness or capacity to practice law." In Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232 (1957) an applicant was accused of having bad moral character for using an alias. The Court stated that, "(O)f course it is wrong to use an alias when it is done to cheat or defraud but it can hardly be said that Schware's attempt to forestall anti-Semitism in securing employment or organizing his fellow workers was wrong." The

Supreme Court does not regard changing one's name to avoid anti-semitism as a demonstration of bad moral character, and in my case, I did not even use an alias, I legally changed my name by court order.

Changing one's name is a common occurrence that is very private in nature. Women do it when they are married or divorce, sometimes several times. People of many ethnicities change their names to avoid or limit racial prejudices. It is common for people of Jewish descent to change their names to avoid religious prejudices or stigmatization. The reasons why an individual changes his name are personal, invoking privacy protections under the Constitution.

The Board asked that I give examples of racial prejudice that I have encountered. I told them how a lawyer at a meeting in Colorado explained how he had "Jewd someone down." Faces were made as if this wasn't a powerful example. There were other more private matters that I did not wish to share with the Board. I didn't tell them when I was 10 years old a kid at camp called me a "kike" and poured a gallon of turpentine down my back, or that when I was 12 someone spray-painted a swastika on the garage of my house. Or the countless times I have been called "Feingold," "Feinstein," or some other permutation of a jewish name by people who mean no offense, but who obviously realize that I am Jewish. My religious affiliation is a private matter that I do not want to reveal to the world by the pronouncement of my name. Spencer is a benign name without any religious or ethnic connotation. There are additional reasons, but suffice it to say, that I have legitimate private reasons for changing my name.

The Board also asked how my family felt about me changing my name. Once again, this line of inquiry crosses into personal matters that do not have a "rational connection" to my "fitness or capacity to practice law." My family's feelings have no relevance to my fitness to practice law and inquiry into this matter constitutes an invasion of privacy. The Board can not simply ask questions for the sake of gathering information. The must only ask questions pertaining to my moral character and fitness to practice law. A prolonged inquiry into the reasons I changed my name suggests that I have done something wrong.

The Board's excessive inquiry with regard to my name change violates the Due Process and Equal Protection Clauses and constitutes an Invasion of Privacy. The excessive inquiry implies that they did not believe my explanation (ie. avoiding religious prejudice), for if they did, why would it be necessary to ask additional questions? The inquiry also suggests there is something wrong with me for changing my name, and otherwise reflects negatively on my moral character.

### Final Comment

Before leaving the Inquiry Panel Hearing, the leader asked me "what do you plan to do if you can't practice law in Colorado?" This comment is inappropriate for several reasons. Firstly, it implies that the Board or at least the leader of the Inquiry has already decided not to admit me, for if I was to be admitted, what purpose would this question serve? Rushing to judgment before the Board has completed the application process is a

denial of Due Process. Secondly, the question is a personal matter that does not have a "rational connection" to my "fitness or capacity to practice law." It is an invasion of privacy. Why is it necessary for the Board to know what I am going to do if I can not practice law in Colorado? Thirdly, the question is also a denial of Due Process because it is very discouraging to the applicant. Due Process includes notions of "fair play" and "substantial justice." When the leader of an inquiry asks 'what I plan to do if I can't practice law in Colorado' with a condescending tone and expression, it affects the other Board members and discourages the applicant from completing the application process. This simply isn't fair. It is the duty of all Board members to maintain a stance of objectivity and neutrality until a final decision has been reached. The failure to do so constitutes a denial of Due Process

**WHEREFORE, I respectfully request that the Department of Justice declare that the aforementioned questions and inquiries violate the ADA and the Constitution.**