# EXHIBIT "J"

November 9, 2005

Colorado Supreme Court Board of Law Examiners
1560 Broadway Street, Suite 1820
Denver, CO   80202
(303) 866-6626
Attn. Susan Q. Gleeson

Dear Ms. Gleeson:

I am writing in response to the Board's letter of October 14, 2005. In the fourth paragraph of this letter, the Board cited two reasons that "relate to (my) fitness for the practice of law in Colorado." If the Board wishes to deny my application for admission based upon this "lack of candor," it may choose to do so, but its request for a six-year old hospital record under suspicion that it relates to mental health violates Sections 35.130(b)(6) and (8) of the Americans with Disabilities Act of 1990 (ADA) as well as multiple provisions of the United States Constitution.

Title II of the ADA prohibits a licensing board from imposing unnecessary burdens on persons with disabilities at all stages of the licensing process, regardless of whether a license is granted and regardless of their knowledge of the disability. "For Defendants to have discriminated against Plaintiffs in contravention of the ADA, Defendants neither need to deny Plaintiff's admission to the Florida Bar nor possess actual knowledge of Plaintiffs' disabilities." Ellen S. v. Florida Board of Bar Examiners, 859 F. Supp at 1493 (S.D.Fla. 1994). I have informed the Board that I am a qualified individual with a disability, yet they are holding my application in abeyance until I provide a 6-year old medical record under suspicion it relates to mental health in violation of the ADA.

The Board's demand for this 1999 record and act of holding my application in abeyance for 18+ months, as well as questions 37 – 40 of the Colorado Bar application, the mandatory "Authorization and Release" form, and the Board's Inquiry Panel Hearing of 2004, violate Section 35.130(b)(6) of the ADA as it reflects the administration of a, "licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability," and establishes, "requirements... that subject qualified individuals with disabilities to discrimination on the basis of disability." This request also violates Section 35.130(b)(8) of the ADA by, "... imposing or applying eligibility criteria that screen out or tend to screen out any individuals with a disability or any class of individuals with disabilities..." The Board's conduct also constitutes an Invasion of Privacy, violates the Interstate Privileges and Immunities Clause, and the Due Process and Equal Protection Clauses of the 14th Amendment. *Any inconsistencies in the application process were caused by the Board's violations of the ADA and the Constitution; my lack of candor was a justifiable attempt to protect myself from illegal and unconstitutional inquiries and does not reflect negatively on my mental stability, moral and ethical character, or my present ability to practice law.*

My position has been consistently supported by the United States Department of Justice, the ACLU, and virtually every court applying the ADA to state licensing procedures. All of these authorities have concluded that inquiries into *history* of mental disabilities are discriminatory, prejudicial, unnecessary, and inhibit treatment of qualified individuals with disabilities. By executing an application to the Colorado Bar, applicants waive their rights of confidentiality and authorize release of treatment and consultation records for protected disabilities. This process violates the ADA because it only requires patients who answer affirmatively to provide information about mental health treatment.

In a case pre-dating the ADA, the Supreme Court held that officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards, *or when their action is invidiously discriminatory*." (emphasis added) Schware v. Board of Bar Examiners of New Mexico, 353 U.S. 232, 238-239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). In Schware, 353 U.S. at 238-239, the Supreme Court also held that "...any qualification must have a rational connection with the applicant's fitness or capacity to practice law." A 6-year old hospital record does not have a "rational connection" to my "fitness or capacity to practice law." The Board's request is therefore in violation of Supreme Court precedent. In another case predating the ADA, Doe v. Syracuse School District, 508 F. Supp. 333 (N.D.N.Y 1981), the court held that a question on a job application form asking whether the applicant had ever experienced a nervous breakdown or undergone psychiatric treatment was illegal under the Rehabilitation Act.

In a 1994 letter from the United States Department of Justice Civil Rights Division to the Committee on Character and Fitness of the State of Arizona, questions similar to those on the Colorado Bar application were deemed to be in violation of the ADA: "the Department finds that the Committee's inquiries regarding a history of mental, emotional, or nervous disorders and its inquiries regarding treatment for excessive use of alcohol or drugs violate the ADA." The letter further states:

> The ADA does not permit unnecessary inquiries into the existence of disabilities, and prohibits policies that impose greater requirements or burdens on individuals with disabilities than those imposed on others. The Committee's use of the questions at issue unnecessarily targets for further investigation those individuals who have histories or diagnoses of disabilities and imposes additional burdens of investigation upon them.

To comply with the ADA, the Arizona Committee **eliminated the disability inquiry entirely**, and limited drug, alcohol, and related inquiries to the past year. The Board is clearly engaging in a prohibited inquiry by targeting me for further inquiry based upon my history of disability.

The Supreme Court of Rhode Island held that in order to comply with the ADA, three questions on the state's bar application regarding substance abuse and mental health histories would have to be modified, In re Petition For Admission to the R.I. Bar, 683 A.2d 1333 (1996). One question asked about drug or alcohol addiction or dependence which was either current or had occurred in the past five years; a second question asked the same about a diagnosis or treatment for "an emotional disturbance, nervous or mental disorder"; a third asked whether the applicant had ever been "hospitalized, institutionalized or admitted to any medical or mental health facility . . . for treatment or

evaluation for any emotional disturbance, nervous or mental disorder." **The Court ordered a rewriting** such that one question would now ask only whether the applicant was *currently* using drugs or alcohol to the extent that it would impair the ability to practice law, and a second question would now ask only whether the applicant is *currently* suffering from any disorder that impairs judgment or would adversely affect the ability to practice law.

In Clark v. Virginia Board of Bar Examiners, 880 F.Supp. at 431 (E.D.Va. 1995) the court stated that according to the American Psychiatric Association, *"psychiatric history should not be the subject of applicant inquiry because it is not an accurate predictor of fitness."* Id., at 435. The court concluded that Question 20(b) ("Have you within the past five (5) years been treated or counseled for any mental, emotional or nervous disorder?") violated the ADA and the applicant was not required to answer the question: "unlike other applicants, those with mental disabilities are required to subject themselves to further inquiry and scrutiny. The Court finds that this additional burden discriminates against those with mental disabilities." Clark at 442. In Ellen S. v. Florida Board of Bar Examiners, (S.D. Fla.1994), the court ruled that Florida's mental health questions "discriminate against Plaintiffs by subjecting them to additional burdens based on their disability."

In Maine, the Bar Examiner's inquiry into diagnosis and treatment for emotional, nervous or mental disorders, and accompanying medical authorization form, was deemed to be in violation of the ADA, In re Applications of Underwood and Plano, No. BAR-93-21, 1993 WL 649283 at *2 (Me. Dec. 7, 1993). The court held that the requirement that applicants answer mental health questions discriminates on the bases of disability and imposes eligibility criteria that unnecessarily screen out individuals with disabilities. In Medical Society of New Jersey, at 7 (D.N.J. 1993) the court ruled that mental health questions imposed extra burdens on qualified persons with disabilities in violation of ADA ("extra investigation of qualified applicants" constituted "invidious discrimination under the Title II regulations.")

The deterrence factor was part of the basis for the State of Minnesota Supreme Court's order In re Petition of Frickey, et al., 515 N.W.2d 741 (Minn. 1994) (deleting questions regarding mental health history from bar admissions application on grounds that the questions deterred law students from seeking needed counseling). "...Broad mental health questions may inhibit the treatment of applicants who do seek counseling. Faced with the knowledge that one's treating physician may be required to disclose diagnosis and treatment information, applicant may be less than totally candid with their therapist." Clark v. Virginia Board of Bar Examiners, 880 F.Supp. at 438 (E.D.Va. 1995).

Individuals with physical and mental disabilities far more severe than mine are exempt from investigation, yet the Board has arbitrarily isolated certain "class(es) of individuals with disabilities," for persecution in violation of the ADA. While states including Colorado have modified their admission applications since 1990 to comply with the ADA, the Board still continues to discriminate against certain individuals with qualified disabilities, while exempting others. Arbitrarily isolating certain disabilities for persecution is precisely the kind of discrimination the ADA was designed to eliminate.

The ADA protects qualified individuals with physical and mental disabilities from discrimination. Under the ADA:

> Examples of physical or mental impairments include, but are not limited to, such contagious and non-contagious diseases and conditions as orthopedic, visual, speech, and hearing impairments; cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

This list is not exclusive, and would therefore contain Autism Spectrum Disorders, Lupus, Dyslexia, Narcolepsy, and a host of additional physical and mental disabilities. The Colorado Bar Application broadly inquires into some of the disabilities protected under the ADA, while exempting others, creating unnecessary eligibility criteria for the following disabilities: drug addiction, alcoholism, schizophrenia, bipolar disorder, psychotic and delusional disorders, major depression, and antisocial personality disorder. However, physical disabilities including cancer, AIDS, epilepsy, blindness, deafness, muscular dystrophy, and mental disabilities including mental retardation, autism, and learning disabilities, are exempt.

***All 18 of the disabilities specifically enumerated in the ADA affect one's ability to practice law, yet the board has chosen to isolate a handful of disabilities for persecution.*** A lawyer afflicted with AIDS, like Tom Hanks' character in Philadelphia, is exempt from disclosing hospital records with regard to treatment. A wheelchair-bound lawyer with multiple sclerosis or muscular dystrophy is similarly exempt, as are lawyers that are deaf or blind. Even lawyers with severe mental disabilities, such as mental retardation or autism are protected from unnecessary inquiries. Clearly, the Board's isolation of drug addiction, alcoholism, schizophrenia, bipolar disorder, and a few other mental disorders is discriminatory under the ADA; these disabilities do not impact one's ability to practice law any more than the aforementioned physical and mental disabilities that are exempt from investigation in the application process.

The Board's actions are particularly egregious considering they removed question #40 (regarding hospitalization for mental disabilities) from their application in 2002 or 2003, following a four-year lawsuit with the ACLU, who argued this question violated the ADA. The National Conference of Bar Examiners (NCBE) has also removed this question from its application (as have most other jurisdictions). Question #26A of the NCBE application asks: "do you *currently* have any condition or impairment... which in any way *currently* affects, or if untreated could affect, your ability to practice law in a competent manner." Therefore, it is apparent that law examiners and courts throughout the country have come to realize that inquiries into history are discriminatory under the ADA and/or unnecessary. While the Board no longer asks applicants about hospitalization for mental disorders, it is demanding that I provided a six-year old hospital record under suspicion it relates to a mental disorder. This "extra investigation" constitutes "invidious discrimination under the Title II regulations."

Lastly, I have reviewed the Colorado Supreme Court web site and have discovered that the State of Colorado routinely issues Conditional Admissions of Misconduct and brief suspensions of 30, 45, or 60 days to lawyers who steal from their clients, commit crimes, and significant ethical improprieties. It is ironic that a New York attorney, who has been admitted for nearly 9 years without a single complaint, is the subject of this witch hunt. The Board is denying me admission unless I provide a 6 year-old confidential medical record that has no bearing on my present ability to practice law, yet Colorado lawyers who commit crimes are slapped on the wrist and their licenses are returned.

Under the Fourteenth Amendment and other provisions of the United States Constitution, plaintiffs have a right of privacy which protects the confidentiality of personal matters and vests applicants with a constitutionally protected interest in avoiding the disclosure of such personal matters. These protections are highlighted by the fact that the United States Supreme Court concluded in Supreme Court of New Hampshire v. Piper, 470 U.S. 274 (1985) that the opportunity to practice law is a "fundamental right."

The right to privacy involves two distinct interests: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." Whalen v. Roe, 429 U.S. 589, 600 (1977); Sheets v. Salt Lake County, 45 F.3d 1383, 1387 (10th Cir. 1995). The first of these is referred to as the interest in "confidentiality" and the second the interest in "autonomy." Hawaii Psychiatric Society v. Ariyoshi, 481 F. Supp. 1028, 1037-38 (D. Hawaii 1979). Both are implicated by the challenged inquiries: the Board's demand for a six-year old hospital record under suspicion it relates to mental health, the request for "Medical Authorization and Release," as well as questions 37-40 of the Colorado Bar Application.

Invading the privacy of qualified applicants is unnecessary, because courts have ruled consistently that inquiries into "conduct" and "behavior" as opposed to "status" provide the appropriate means for screening applicants. In Medical Society of New Jersey (D.N.J. 1993), the court stated that, "The essential problem with the present questions is that they substitute an impermissible inquiry into the *status* of disabled applicants for the proper, indeed necessary, inquiry, into the applicants' behavior." The court found questions regarding applicant's treatment for psychiatric illness and substance abuse unnecessary where the medical examiners could "formulate a set of effective questions that screen out applicants based only on their behavior and capabilities." Id. The Minnesota Supreme Court struck inquiries into a bar applicant's mental health history and found that "question relating to *conduct* can, for the most part, elicit the information necessary for the Board of Law Examiners to enable the Court to protect the public from unfit practitioners." In re Petition of Frickey, 515 N.W.2d 741, 741 (Minn. 1994); see also, In re Underwood, 1993 WL 649283, at *2 (striking inquiries into mental health history, but stating that questions related to "behavior that can affect the practice of law" are permissible).

Inquiries into disability history are also unnecessary because the Colorado Bar application process inquires extensively into behavior. The application process for the Colorado Bar is extensive and provides ample information without requiring the use of discriminatory practices. School records, arrest records, employment records, military records, driving

records, business and personal references, personal interviews, and even fingerprints are included in the application process. The discriminatory practice of red-flagging particular mental disabilities is therefore not necessary to accomplish their goal of admitting only qualified applicants and constitutes an invasion of privacy.

The Board has violated the Due Process Clause of the 14th Amendment. The United States Supreme Court has recognized there is substantial liberty interest under the Due Process Clause of the Constitution in avoiding the social stigma of being known to have been treated for a mental illness. "An individual's liberty is 'substantially affected' by the stigma attached to treatment in a mental hospital Parham v. J.R., 442 U.S. 584, 622; "Discharged patients must not only cope with the stigma of having once been hospitalized, but must often continue to cope with the 'mental illness' label itself… Even the most enlightened persons may unwittingly harbor views associated with this stigma." In Re John Ballay, 482 F.2d 648, 668-69 (D.C. Cir. 1973). "Congress, in enacting the 'regarded as' provision, acknowledged that society's accumulated myths and fears about disability and disease are as handicapping as are the physical limitations that flow from the impairment." County v. Arline, 480 U.S. 273 (1987)

## DAMAGES

I would also like to inform the Board that I have sustained damages as a result of your illegal and unconstitutional application process. I have not been able to practice law for 1½ years in Colorado, despite fulfilling all necessary requirements. I was subjected to an "Inquiry Panel Hearing" hearing and numerous requests for affidavits and records. While I moved to Colorado to practice law, I have been unable to do so. I have been deprived of the ability to earn a livelihood, and I have lost status as a professional in the community. I have also sustained significant lost-earnings as a result of the Board's discriminatory practices. I also feel stigmatized by the inquiry as my identity and reputation have been tarnished.

## REQUESTS FOR ACCOMODATION

1) I request all information pertinent to accommodations offered to qualified individuals with disabilities in accordance with the Americans with Disabilities Act.

2) I request that the Board appoint an independent physician to perform an examination to determine if I am presently fit to practice law.

3) I request an Inquiry Panel Hearing to be afforded the opportunity of explaining my lack of candor to the Board.

4) I request a written explanation of why a 6-year old hospital record is "necessary" for the Board to complete the application process.

5) I request a written explanation of why the Board has a "compelling interest" in obtaining a 6-year old hospital record.

6) I request the names of all Board members present at my October 2004 Inquiry Panel Hearing.

Please advise me at your earliest convenience how you wish to proceed.

Sincerely,


Evan Spencer

**970.988.3057
721 E. 34th Place
Loveland, CO  80538**