

Not Reported in F.Supp.                                                                                                             Page 1
Not Reported in F.Supp., 1995 WL 29609 (N.D.Ill.), 8 A.D.D. 971, 6 NDLR P 104
**(Cite as: 1995 WL 29609 (N.D.Ill.))**

**Motions, Pleadings and Filings**

United States District Court, N.D. Illinois, Eastern Division.
Kenneth A. McCREADY, Plaintiff,
v.
ILLINOIS BOARD OF ADMISSIONS TO THE BAR, et al. Defendants.
**No. 94 C 3582.**

Jan. 24, 1995.

*MEMORANDUM OPINION AND ORDER*

PLUNKETT, District Judge.

**\*1** Plaintiff Kenneth A. McCready alleges violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12133, and the Federal Regulations promulgated pursuant to the ADA at 28 C.F.R., Part 35. Plaintiff also asks this Court to exercise supplemental jurisdiction over three state law claims arising under the Illinois Freedom of Information Act ("FOIA"), 5 ILCS 140/1, *et seq.,* the Illinois Administrative Procedure Act (APA), 5 ILCS 100/1-1, *et seq.* and the Illinois Human Rights Act, 775 ILCS 5/5-101, *et seq.* Plaintiff's complaint seeks monetary damages and equitable and declaratory relief against the Defendant entities and certain of the individual Defendants. [FN1]

Before the Court is Defendants' motion to dismiss Plaintiff's six-count complaint. Defendants bring this motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rule of Civil Procedure. Defendants claim absolute judicial immunity from the acts of which Plaintiff complains. For the reasons specified within this opinion, Defendants' motion to dismiss is granted in its entirety.

*Background*
Plaintiff's thirty-seven page complaint includes three federal and three state law claims against the Illinois Board of Admissions to the Bar ("Board"), the Committee on Character and Fitness for the First Judicial District ("Committee"), and various officers, administrators, and members of the Board and the Committee (collectively, "Admissions Officials").

Plaintiff's complaint arises from his efforts to be certified for admission to the bar of the State of Illinois. Plaintiff alleges that he applied for admission and passed the bar examination. Plaintiff was then interviewed by members of the Committee's Inquiry Panel, consented to a psychiatric evaluation, and ultimately presented his case in support of his application at a formal hearing convened before a panel of the Committee, which declined to certify him for admission.

Plaintiff is seeking compensatory, punitive and equitable relief based upon the above outlined scenario. The subject matter identified and the relief requested by Plaintiff has become a contested issue between the parties. Plaintiff characterizes his complaint as a general challenge to the constitutionality or legality of certain of the Defendants' practices, rules, policies or procedures. Defendant maintains the subject matter of the complaint to be Plaintiff's vehement displeasure with the Committee's judgment regarding Plaintiff's character and fitness to practice the law.

*Discussion*
A party asserting jurisdiction has the burden of proof on a 12(b)(1) motion to dismiss. *Thomson v. Gaskill,* 315 U.S. 442, 445 (1945). If jurisdiction is based on a federal question, plaintiff must show that he has alleged a claim under federal law and that the claim is not frivolous. *Baker v. Carr,* 369 U.S. 186, 199 (1962). The court must view

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2

Not Reported in F.Supp., 1995 WL 29609 (N.D.Ill.), 8 A.D.D. 971, 6 NDLR P 104

**(Cite as: 1995 WL 29609 (N.D.Ill.))**

allegations of fact in the complaint as true, along with reasonable inferences therefrom, in the light most favorable to the plaintiff. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). However, we need not credit conclusions of law. *See Reichenberger v. Pritchard,* 660 F.2d 280, 282 (7th Cir.1981); *Mescall v. Burrus,* 603 F.2d 1266, 1269 (7th Cir.1979); *City of Milwaukee v. Saxbe,* 546 F.2d 693, 704 (7th Cir.1976). *See also* 5A C. Wright and A. Miller, Federal Practice and Procedure § 1357 at 311-18 (2d ed. 1990). Further, plaintiff's complaint should not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief.... Nevertheless, a plaintiff must allege sufficient facts to outline the cause of action, proof of which is essential to recovery." *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047 (1986) (citations omitted).

**\*2** Defendants contend that this Court lacks jurisdiction over the subject matter of this action and that we must dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Defendants base their jurisdictional argument upon the *Rooker-Feldman* doctrine. The doctrine takes its name from two major Supreme Court cases interpreting 28 U.S.C. § 1257, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983).

In *Rooker,* the Supreme Court held that the lower federal courts lack jurisdiction to review final judgments of state courts. *Feldman* made clear that the doctrine applied with equal force where the decisions sought to be reviewed were those of state court committees. In *Feldman,* the plaintiffs sought waivers of a District of Columbia bar admissions rule requiring applicants to have degrees from accredited law schools. The waivers having been denied, the applicants sued in federal district court, alleging violation of their constitutional rights. The Court held that bar admissions are judicial proceedings because ultimate authority rests with the highest court in the jurisdiction. Even though admissions proceedings may not involve the full panoply of procedures normally found in court adjudications, the decisions reached or ratified by state supreme courts in such cases cannot be reviewed by or relitigated in federal district court. *Feldman,* 460 U.S. at 477-79, 480-82. *See also Leaf v. Supreme Court of Wis.,* 979 F.2d 589, 596-97 (7th Cir.1992); *cf. Buckley v. Illinois Judicial Inquiry Bd.,* 997 F.2d 224, 227 (7th Cir.1993). Under the two-prong test established by *Rooker-Feldman,* we must first determine whether Plaintiff's petition to the Bar of Illinois was a judicial proceeding, and second whether Plaintiff's claims are so inextricably intertwined with that proceeding as to make review of his claims an impermissible review of a state judicial proceeding. *Leaf v. Supreme Court of Wis.,* 979 F.2d 589, 597 (7th Cir.1992), *cert. denied,* 113 S.Ct. 2417 (1993).

Plaintiff responds to Defendants' *Rooker-Feldman* argument by contending: (1) the proceedings involving his application to the bar of Illinois are not "judicial" in nature, therefore, his action in this Court does not constitute a challenge to a state judicial decision; and (2) plaintiff's complaint is a general challenge to the constitutionality of Defendants' practices, rules, policies or procedures.

Throughout Plaintiff's response to Defendants' motion, Plaintiff attempts to distinguish and discount the effect of the *Feldman* decision on his complaint. Plaintiff argues that *Feldman* was decided on, and therefore limited to, the federal statutory jurisdiction of the courts of the District of Columbia. Plaintiff both misreads and then misinterprets *Feldman.* The holding in *Feldman* has been applied in virtually every federal circuit, including the Seventh Circuit, in cases involving challenges to decisions rendered by judicial boards and committees responsible for bar admissions and attorney discipline. *See, e.g., Buckley v. Illinois Judicial Inquiry Bd.,* 997 F.2d 224 (7th Cir.1993); *Leaf v. Supreme Court of Wis.,* 979 F.2d 589 (7th Cir.1992); *Lowrie v. Goldenhersh,* 716 F.2d 401 (7th Cir.1983).

**\*3** Illinois courts consider bar admissions proceedings to be judicial in nature. An

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3

Not Reported in F.Supp., 1995 WL 29609 (N.D.Ill.), 8 A.D.D. 971, 6 NDLR P 104

**(Cite as: 1995 WL 29609 (N.D.Ill.))**

application is treated as a petition to the court, and "[an] applicant for admission to the bar has the burden of demonstrating the good moral character and general fitness necessary for the practice of law." *In re Childress,* 138 Ill.2d 87, 561 N.E.2d 614, 619 (1990). *See also, In re Glenville,* 139 Ill.2d 242, 565 N.E.2d 623, 627 (1990). The Committee on Character and Fitness, the body before which an applicant must carry his burden, possesses virtually all of the powers of courts to determine issues of fact and law. *See Kalish v. Illinois Educ. Ass'n,* 157 Ill.App.3d 969, 510 N.E.2d 1103, 1106 (1st Dist.1987); *accord, Rothman v. Emory Univ.,* 828 F.Supp. 537, 543 (N.D.Ill.1993). Although the Committee's determination is advisory to the Illinois Supreme Court, *In re Loss,* 119 Ill.2d 186, 518 N.E.2d 981, 983 (1987), the supreme court will not reverse the Committee's certification of an applicant unless there is "clear and convincing evidence" warranting reversal; denial of an application will not be reversed unless the Committee has acted arbitrarily. *Glenville,* 565 N.E.2d at 627; *Loss,* 518 N.E.2d at 983.

"A judicial proceeding ... 'investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist.' " *Leaf,* 979 F.2d at 596, *quoting Feldman,* 460 U.S. at 477. "A legislative proceeding, however, focuses on the future 'and changes existing conditions by making a new rule to be applied thereafter.' " *Id.* The determination of whether an act or decision is judicial in nature depends not on "the character of the body but the character of the proceedings." *Feldman* 460 U.S. at 477, *citing Prentis v. Atlantic Coast Line Co.,* 211 U.S. 210, 226 (1908).

Upon consideration of the Illinois cases cited above and after applying the relevant tests prescribed by the U.S. Supreme Court to the proceedings conducted in connection with Plaintiff's petition for admission to the Illinois bar, we find said proceedings to be judicial in nature. [FN2] *See Rothman,* 828 F.Supp. at 543; *cf. Greening v. Moran,* 953 F.2d 301, 305 (7th Cir.), *cert. denied,* 113 S.Ct. 77 (1992) (attorney disciplinary proceeding before state supreme court is judicial in nature). Therefore, we find the *Rooker-Feldman* doctrine applies and, for the most part, is determinative of Defendants' motion to dismiss. There are portions of Plaintiff's complaint, however, that arguably survive application of the doctrine.

> To the extent that Hickey and Feldman mounted a federal challenge to the constitutionality of [the] Rule, ... the district court did have subject-matter jurisdiction over their complaints.
>
> ....
>
> The difference between seeking review in a federal district court of a state court's final judgment in a bar admission matter and challenging the validity of a state bar admission rule has been recognized in the lower courts and, at least implicitly, in the opinions of this Court.

**\*4** *Feldman,* 460 U.S. at 482-84. Later on in the *Feldman* opinion, the Court cited the following language, with approval, from an opinion of the Tenth Circuit Court of Appeals:

> [T]here is a subtle but fundamental distinction between types of claims which a frustrated bar applicant might bring to federal court: The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission.... [W]hile federal courts do exercise jurisdiction over many constitutional claims which attack the state's power to license attorneys involving challenges to either the rule-making authority or the administration of the rules, ... such is not true where review of a state court's adjudication of a particular application is sought.

*Doe v. Pringle,* 550 F.2d 596, 597 (10th Cir.1976), *cited by, Feldman,* 460 U.S. at 485.

Plaintiff argues that, while the subtle border may have been abridged at certain points, there is enough matter pled in his complaint which indicates that his action is a general challenge to the constitutionality of certain of Defendants practices, rules, policies or procedures rather than an appeal of the denial of his particular petition. The reality of Plaintiff's complaint is that there are precious few points where he has not trampled the border

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 29609 (N.D.Ill.), 8 A.D.D. 971, 6 NDLR P 104

**(Cite as: 1995 WL 29609 (N.D.Ill.))**

Page 4

between the particular and the general. The overwhelming thrust of the complaint is nothing but a challenge of the denial of Plaintiff's license to practice law in Illinois, not a general constitutional challenge. In paragraph after paragraph, Plaintiff focuses on rulings on various evidentiary and procedural issues made during the course of his application process. Plaintiff describes specific interviews with Committee members, prehearing procedures, expert evaluations, hearing testimony, questions asked and conduct displayed. In his extensive "prayer for relief", he specifically asks for "a hearing de novo" or alternatively, that Defendants be enjoined to certify him for the practice of law, and "ensure that he is immediately licensed...." (Compl. at 36, ¶ p.)

We conclude, as the court did in *Leaf,* that to the extent the complaint is or can be construed as a challenge to the denial of Plaintiff's license to practice law in Illinois, the action must be dismissed for lack of subject matter jurisdiction. This ruling covers the overwhelming majority of allegations found within Plaintiff's federal law claims, counts I, II and V. [FN3]

We must, however, "sift" Plaintiff's complaint "to see if the general may be separated from the personal." *Lowrie v. Goldenhersh,* 716 F.2d 401, 406 (7th Cir.1983). This task has been difficult. Plaintiff's erudite complaint is artlessly drawn. The complaint includes 160 paragraphs of allegations, peppered with invective argument, interrupted by headings which ostensibly serve to organize the verbiage into identifiable legal theories. After a close examination allowing Plaintiff the benefit of every doubt, as we must, we find sufficient allegations exist regarding certain questions involving drug and alcohol dependency found on recommendation forms which, arguably, indicate a general challenge to the constitutionality of certain of Defendants' practices and their relationship to the ADA. This gives us subject matter jurisdiction and defeats the jurisdictional challenge of Defendants' Fed.R.Civ.P. 12(b)(1) motion to dismiss. Defendants have, however, also moved to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. We turn now to those portions of Plaintiff's complaint which arguably form the basis for a general constitutional challenge.

**\*5** Counts I and II of Plaintiff's complaint focus on the ADA and the regulations promulgated pursuant to the ADA, 28 C.F.R., Part 35. In Plaintiff's view, "[n]o psychiatric, psychological, physiological or other mental examination is pertinent or otherwise appropriate for or related to any applicant's present good moral character or fitness to practice law." (Compl. ¶ 76.) Plaintiff thus contends that the ADA proscribes any investigation of an applicant's history of addiction, substance abuse, or mental disorders. Plaintiff's contention is misconceived.

Under Title II, the protected class is limited to "qualified individuals with a disability." 42 U.S.C. § 12132. By protecting "qualified individuals with a disability" (and not all individuals with disabilities), the ADA expressly recognizes that, in some cases, an individual may be unqualified by reason of the disability. The Supreme Court, in construing provision of the Rehabilitation Act of 1974, 29 U.S.C. § 794, held that the prohibition of discrimination is not meant to preclude "taking into account any limitation resulting from [a] handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406 (1979). It is not enough to be qualified "but for" a disability; "the right inquiry is whether the person can satisfy the program's requirements despite his handicap." *Anderson v. University of Wis.,* 841 F.2d 737, 740 (1988).

Plaintiff has alleged injury as a result of disability-related questions asked in connection with his application to the Illinois bar. Plaintiff alleges that the information ascertained by the questions force him, and all others so situated, to undergo the burden and humiliation of additional mental and or physical examinations based purely upon their disabilities. Plaintiff's allegations regarding said questions bear superficial similarity to the questions that were disapproved in *Ellen S. v. Florida Bd. of Bar Examiners,* 859 F.Supp. 1489 (S.D.Fla.1994).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5

Not Reported in F.Supp., 1995 WL 29609 (N.D.Ill.), 8 A.D.D. 971, 6 NDLR P 104

**(Cite as: 1995 WL 29609 (N.D.Ill.))**

In *Ellen S.,* the court upheld the sufficiency of the plaintiffs' complaint, which challenged a question on the application to the Florida Bar.  The question required every applicant to disclose whether he or she "has ever sought treatment for a nervous, mental or emotional condition, has ever been diagnosed as having such a condition, or has ever taken any psychotropic drugs." *Id.* at 1491.  An affirmative answer to any part of the question "automatically triggers a requirement" that the applicant identify all treating or consulting professionals and release all records.  In the absence of the required information and the release, Florida will not process the application.  Applicants who answer in the affirmative are subject to further investigation "as a matter of routine," as the health professionals named by the applicant are asked to respond to questions about the treatment rendered. *Id.*

The court, relying on *Medical Society of New Jersey v. Jacobs,* 1993 WL 413016 (D.N.J. Oct. 5, 1993), held that Florida's inquiries "discriminate against Plaintiffs by subjecting them to additional burdens based on their disability." *Id.* at 1494.  The *Jacobs* court was troubled by the fact that the licensing agency asked the same broad-based questions of all applicants and substituted "inquiry into the status of disabled applicants for the proper, indeed necessary, inquiry into the applicants' behavior." *Jacobs* at * 8.  Other courts, in considering similarly broad questions to which all applicants must respond, and which "automatically trigger" further investigations, have reached similar conclusions. *See In re Underwood and Plano,* 1993 WL 649283 (Me. Dec. 8, 1993); *Applicants v. Texas State Bd. of Law Examiners,* No A 93 CA 740 SS, slip op. at 20 (W.D.Tex. Oct. 10, 1994).

**\*6** The process through which Plaintiff applied for the bar of Illinois differed significantly, however, from the foregoing.  Unlike the plaintiffs in *Ellen S.,* the Plaintiff at bar was not required to respond to disability-related questions on his application form.  The questions at issue were asked of all applicant's references.  At the time of Plaintiff's application, all third parties listed as references were asked whether they had knowledge of any drug or alcohol dependency or abuse by the applicant during the previous ten years, and whether they knew of any emotional, mental, behavioral or nervous affliction.  This inquiry is distinguishable from questions asked on the bar application itself because it is noncoercive and imposes no additional burden on the applicant.  Further, such an inquiry directed at Plaintiff's references necessarily focuses on his behavior, not his status.

Plaintiff argues that the questions require third-party references to have medical and/or psychiatric training.  We reject this argument.  These questions were not used to diagnose the applicants.  They were used to acquire information regarding the applicants character and fitness.  If the third-party reference misunderstood or was unable to form an opinion or was unwilling to answer the questions, they simply declined to respond, just as Plaintiff's references declined to respond to the questions at issue.  We find the questions to be reasonable inquiries.

In *Ellen S.,* the court found that Florida's efforts to develop comprehensive profiles of all applicants went too far by requiring disclosure of all treatment and counseling for any mental disorder.  The court did not suggest, however, that a more-narrowly crafted inquiry would violate the ADA. In Texas, a court has sustained the use of narrow questions to obtain information about any serious mental illnesses suffered by bar applicants. The court stated, in pertinent part:

> [T]he ADA does not preclude a licensing body from any inquiry and investigation related to mental illness, instead allowing for such inquiry and investigation when they are necessary to protect the integrity of the service provided and the public....

*Applicants v. Texas State Bd. of Law Examiners,* No. A93 CA 740 SS, slip op. at 20 (W.D.Tex. Oct. 10, 1994).

The point of mental health inquiries by bar committees is not to "screen out" or "single out" individuals with mental disabilities or make it more difficult for them to become licensed attorneys.  Whether an individual is qualified notwithstanding a disability or unqualified because of a disability

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

depends on all of the facts of the case, including all pertinent facts about the disabling condition as well as all mitigating factors. The real point of the inquiry, and of all questions asked of applicants, is to develop a comprehensive picture of each individual, to compile a record of significant life events upon which informed judgments as to character and fitness can be base. Title II of the ADA places none of those facts off limits.

**\*7** The purpose of the ADA is to protect disabled individuals from discrimination and to promote integration of disabled individuals into the mainstream of society. It is ludicrous, however, to propose that this purpose can only be accomplished by prohibiting a state from directly investigating and assessing an applicant's emotional and mental fitness to determine if the applicant has sufficient competence to discharge the responsibilities of a lawyer before the state warrants by licensing to the citizens that the individual has the mental and emotional fitness to fulfill a lawyer's legal, ethical, and moral responsibilities. The Illinois Board of Admissions to the Bar would be derelict in its duty if it did not investigate the mental health of prospective lawyers to the extent allowed by law.

*Conclusion*

The overwhelming majority of Plaintiff's complaint is a challenge to the denial of Plaintiff's license to practice law in Illinois. Pursuant to the *Rooker-Feldman* doctrine, those portions of the complaint are dismissed for lack of subject matter jurisdiction. Further, there is no basis for setting aside the decision of the Committee on Character and Fitness due to the allegedly discriminatory effect of impermissible criteria, pursuant to the ADA. The ADA does not prohibit reasonable inquiry concerning the mental disabilities or addictions of applicants for admission to the bar.

Plaintiff's federal law claims, counts I, II and V, are hereby dismissed. Having lost the predicate federal jurisdiction as the basis for any supplemental jurisdiction we might have over Plaintiff's state law claims, we dismiss Plaintiff's state claims, without prejudice. Plaintiff may file them in state court or not, as he wishes. Plaintiff's complaint in this Court is dismissed in its entirety, pursuant to Rules 12(b)(1) an 12(b)(6) of the Federal Rules of Civil Procedure.

> FN1. Defendants include and are charged as follows: The Illinois Board of Admissions to the Bar; Stuart Duhl, solely in his official capacity as president of said Board; Jan Hefti, solely in her official capacity as administrator of the Board; Illinois Board of Admissions Committee on Character and Fitness for the First Judicial District; Robert D. Boyle, individually and in his capacity as chairman of said committee; Nancy McKenna, individually and in her official capacity as committee administrator; Edward J. Bradley, Sr., individually and in his capacity as attorney for the committee; R. Mathew Simon, Veva I. Young, and Timothy M. Daw, each individually and in their official capacities as members of the committee's inquiry panel; Regina Kwan Peterson, Paul J. Sussman, Edward T. McElroy, Richard A. Michael, Andrew Gelman, Joseph S. Kotlarz, Jr., and Nancy Katz, each individually and in their official capacities as members of the committee's hearing panel.

> FN2. Plaintiff argues that the individual Defendants are not entitled to judicial immunity because they did not act in a judicial capacity. It is well-established that the Committee on Character and Fitness of the Illinois Board of Admissions is an arm of the Supreme Court of Illinois. *In re Latimer,* 143 N.E.2d 20, 22 (1957). As a "quasi-judicial body," members of the Illinois Board of Admissions act in a judicial capacity and are entitled to absolute immunity. *Kalish,* 510 N.E.2d at 1106-07. Further, Plaintiff alleges nothing with respect to the individual Defendants to suggest that he is complaining about any act other than those taken in the course of proceedings before the Committee.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7

Not Reported in F.Supp., 1995 WL 29609 (N.D.Ill.), 8 A.D.D. 971, 6 NDLR P 104
**(Cite as: 1995 WL 29609 (N.D.Ill.))**

> FN3. Count V alleges violations of Plaintiffs civil rights pursuant to 42 U.S.C. § 1983. A district court has no jurisdiction to review a state court ruling, even when dressed up as a civil rights suit. *Ritter v. Ross,* 992 F.2d 750 (7th Cir.1993). *Guess v. Board of Medical Examiners,* 967 F.2d 998, 1002-03 (4th Cir.1992) (plaintiffs who lose in state court may not "recast their claims in federal court under the guise of federal constitutional claims that were not raised or decided by the state court ... if the constitutional claims are inextricably intertwined with the merits of the state court judgment."). We find the allegations within count V to be inextricably intertwined with the merits of Plaintiff's petition to the bar.

Not Reported in F.Supp., 1995 WL 29609 (N.D.Ill.), 8 A.D.D. 971, 6 NDLR P 104

### Motions, Pleadings and Filings (Back to top)

• 1:94cv03582 (Docket) (Jun. 09, 1994)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.